IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| WILLIAM OATES and ASSOCIATES, INC., WILLIAM OATES, and HEIDE BREDFELDT, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 2:07-cv-83 ) |
| QUANTUM HOSPITALITY GROUP, INC. f/k/a INNS OF MAINE, INC., HOWARD J. LEVITAN, and REBECCA A. LEVITAN, | ) ) ) ) ) |
| Defendants. | ) |

**VERIFIED COMPLAINT**

Plaintiffs William Oates and Associates, Inc. ("WOA"), William Oates, and Heide Bredfeldt complain against Defendants as follows.

NATURE OF ACTION

This is an action seeking injunctive and other equitable relief arising out of Defendants' bad faith attempt to deprive the Plaintiffs of the benefit of a 2004 Agreement whereby Plaintiffs agreed to transfer their highly successful consulting business to Defendants. The effect of Defendants' scheme will be to financially devastate Plaintiffs.

Plaintiffs started the nation's preeminent hospitality consulting business in Brattleboro, Vermont in 1984. The business carried (and still carries) the name of the two individual Plaintiffs, Oates & Bredfeldt. William Oates and Heide Bredfeldt are husband and wife (for convenience sake, Mr. Oates and Ms. Bredfeldt will collectively be referred to as "the Oates"). In contemplation of retirement, Plaintiffs entered into an Agreement with Defendant Howard

Downs
Rachlin
Martin PLLC

Levitan and his wife Rebecca in 2004 for the gradual transfer of the business to Defendants. Defendants now have a controlling interest in Oates & Bredfeldt, LLC (the "LLC") and are using that position to oppress the now-minority-position Plaintiffs and deprive Plaintiffs of the consideration to which they are entitled. Specifically, in their majority position, Defendants have noticed a Special Meeting of LLC Members to take place on April 2, 2007, at the law offices of Bernstein, Shur, Sawyer & Nelson in Portland, Maine, the Attorneys for the Defendants. At this Meeting, Defendants's Notice recites that they intend to take a number of actions, all of which are in clear violation of their duties of loyalty to the LLC and Plaintiffs. These actions include, but are not limited to: firing all Vermont employees, closing the LLC's office in Brattleboro, and notifying all clients of the closure of the Vermont office and consolidation of business in Maine. These actions violate 11 V.S.A. § 3054 and are therefore invalid. Plaintiffs seek an Order from this Court enjoining Defendants from holding the Special Meeting on April 2nd and/or from taking the actions proposed in the notice of the Special Meeting.

The LLC's Operating Agreement contains an arbitration provision and Plaintiffs intend on submitting this dispute to arbitration. Given the exigencies of the circumstances, however, Plaintiffs seek this Court's assistance in maintaining the status quo while arbitration proceeds.

Last Monday (March 26, 2007) Defendants filed suit in the Federal District Court for the District of Maine. Plaintiffs were out of Vermont on a long-planned trip; a fact well-known to Defendants. Defendants' Maine suit seeks to enforce a Non-Compete clause in the Agreement. In addition to many other overreaching terms, the Non-Compete clause prohibits the Plaintiffs from carrying on their trade anywhere in New England for four years. Defendants' Maine action is substantively without merit. Because the Agreement provides for the application of Vermont law, because the real property that is the subject of the instant suit is located in Vermont, and

because the business is a Vermont corporation, Plaintiffs will seek to consolidate the Maine action with the instant action, and transfer all proceedings to this Court.

In any event, because of the imminent, and irreparable, harm that is threatened against Plaintiffs, Plaintiffs seek the emergency protection of this Court and request equitable relief from this Court to preserve the status quo while arbitration proceeds.

## PARTIES

1. Plaintiff WOA is a Vermont corporation with its principal place of business in Brattleboro, Vermont. WOA was started in 1984 by William Oates and Heide Bredfeldt.

2. Plaintiff William Oates is a former professor of Southeast Asian and Chinese history. Plaintiff Heide Bredfeldt is a former psychotherapist. The Oates incorporated WOA in 1984 and conducted business under the trade name Oates & Bredfeldt.

3. Upon information and belief, Defendant Quantum Hospitality Group, Inc. f/k/a Inns of Maine, Inc. ("Quantum") is a Maine corporation with its principal place of business in Damariscotta, Maine.

4. Upon information and belief, Defendant Howard J. Levitan is a resident of Damariscotta, Maine.

5. Upon information and belief, Defendant Rebecca A. Levitan is a resident of Damariscotta, Maine.

6. Defendant Quantum is a creation of, and wholly owned by, Defendants Howard and Rebecca Levitan (the "Levitans").

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

9. Under the trade name Oates & Bredfeldt, WOA provided consulting services to the hospitality industry in connection with transactions involving the purchase and sale of inns.

10. Oates & Bredfeldt was a very successful enterprise, becoming the premier hospitality consultant in New England and, indeed, throughout the nation.

11. After many successful years of running their business, the Oates wished to gradually transition into retirement. Because of the many years spent building the Oates & Bredfeldt brand name, the Oates did not want to simply sell the business, but instead sought a continued role in the operation of the business to ensure the ongoing success of their legacy.

12. The Oates also wished to structure any deal involving the transfer of their business to ensure that they would receive a stream of retirement income from the operations of the enterprise. In other words, the Oates were not only interested in the continued viability of the business because it carried their names, but they were also interested in the continued viability as a means of support in their retirement.

13. Defendants Howard Levitan and Rebecca Levitan were also involved in the hospitality business. Mr. Levitan was a lawyer from Boston who had retired to Maine from the practice of law and was running an inn in Newcastle, Maine. Knowing of the Oates' age and

stage of life, and aware of their desire to retire, the Levitans contacted the Oates about a possible agreement to transition the Oates & Bredfeldt business.

14.  On January 1, 2004, the parties entered into an Asset Acquisition Agreement (the "Asset Agreement"). This Asset Agreement incorporated a separate Operating Agreement for the LLC (the "Operating Agreement") and a separate Non-Qualified Pension Agreement (the "Pension Agreement"). The Agreements were drafted by Attorney Defendant Howard Levitan.

15.  Pursuant to these Agreements, the parties jointly created a "NEWCO" known as "Oates & Bredfeldt, LLC." The two Members of the new LLC were, and remain: (1) WOA d/b/a Oates & Bredfeldt, which was entitled "OLDCO" and (2) Inns of Maine, Inc., now known as Quantum Hospitality Group, Inc.

16.  Under the terms of the Asset Agreement, OLDCO sold all of its assets to NEWCO, including the "Oates & Bredfeldt" brand name, more than 20 years of accumulated good will, and all existing contracts, for $10,000. Like many other aspects of the Agreement, the sale price was shockingly low, almost to the point of substantive unconscionability.

17.  The $10,000 payment was not the only consideration for the Agreement, however. The Pension Agreement was also a significant consideration for this deal. The Pension Agreement provides for an annual payment of $50,000 to William Oates and Heide Bredfeldt in perpetuity upon William Oates' retirement from the business. These payments are to be made in monthly installments, beginning on January 1, 2008, the date of William Oates' scheduled retirement from the LLC.

18.  The Operating Agreement also provides for yearly "Guaranteed Payments." The 2007 Guaranteed Payment to the Plaintiffs is $75,000. These Guaranteed Payments are to be made in 12 equal distributions at the start of each month. Thus, the Plaintiffs are entitled to

payment of $6250 the start of each month in 2007. The Defendants failed/refused to make these payments on March 1, 2007, and have indicated that they will not make the Guaranteed Payment due to Plaintiffs on April 1, 2007.

19. Plaintiffs are also entitled to an annual distribution of "net profits" of the LLC, after distribution of the Guaranteed Payments and after the LLC's working capital account is brought back to $100,000.

20. From the beginning of the enterprise in 1984, the Oates' home has acted as the main office of the enterprise. The 2004 Agreement includes a separate Lease Agreement whereby the LLC rents a portion of the Oates' home as an office.

21. Finally, under the Agreement the Plaintiffs are entitled to reimbursement of their business expenses, an automobile allowance, and health insurance.

22. Thus, the consideration due to be received by the Oates for their agreement to transfer their business to the Levitans is:

(A)   $10,000;

(B)   Pension Plan Payments of $50,000 per year;

(C)   Yearly "Guaranteed Payments;"

(D)   Rent payment from the LLC for use of the Oates' house;

(E)   Distribution of net profits of the LLC; and

(F)   Various benefits such as health insurance, automobile allowance, etc.

23. As is clear from the above list, all of the consideration except for the initial $10,000 payment is executory, viz. the consideration is ongoing.

24. By their present actions, and their proposed actions of April 2, 2007, Defendants seek to avoid paying the Plaintiffs the consideration listed in (B) through (F) above. In other

DOWNS
RACHLIN
MARTIN PLLC

6

words, now that the Defendants have received the full benefit of their bargain, they seek to deprive Plaintiffs of their remaining consideration and to isolate them from current and prospective clients which are the sole source for payments of the sums due them.

25. In exchange for receipt of the above consideration, the Oates agreed to gradually transfer their business to the Levitans. The Operating Agreement took effect in 2004. Pursuant to that Agreement, Plaintiffs retained 70% control of the LLC in 2004 and Defendant held a 30% interest. The Agreement then provided that these respective interests changed over time: in 2005 the Plaintiffs held 52.5% interest, in 2006 Plaintiffs' interest was 35%, and in 2007 Plaintiffs' interest is only 27.5%.

26. Not only are Defendants now seeking to deprive the Oates of the consideration which they are due, the Defendants are attempting to enforce a draconian Non-Compete Agreement against the Oates. In other words, Defendants would deprive the Oates of their just consideration for entering into the Agreement and would also deprive the Oates from making a living to recoup the Retirement Payments that will undoubtedly be lost due to the Defendants' actions.

27. Under the terms of the Non-Compete Agreement, the Oates agreed to forebear from competing against the Levitans for four (4) years in any of the New England States. The logical consideration for this Non-Compete was the future Pension Payments. Because the Oates believed that the Levitans would operate the enterprise in good faith, thus creating the revenue needed for the Pension Payments, there was no reason for the Oates to wish to compete against the LLC.

28. Since the Levitans have been in control of the business, however, the business has been transformed from a successful enterprise to a failing one. This decline is the direct result of

the actions of the Levitans.

29.     Numerous long-time Oates & Bredfeldt customers and referral sources have complained to the Plaintiffs about the Levitans' nasty, "big city" tactics and have refused to do business with the Levitans.

30.     The Levitans have not only failed to effect a transition to themselves, their origination of new business is a small fraction of that which continues to come to the Oates, as a result principally of the latter's industry acceptance and reputation for credibility and integrity.

31.     The Levitans have refused to make the required Guaranteed Payments to the Plaintiffs as per the Agreement. Because the Levitans have refused to allow the Plaintiffs access to the LLC's Books and Records, it is unclear whether the Levitans have made the Guaranteed Payments to themselves.

32.     Even though the LLC realized a net profit for 2006, the Levitans refused to pay the Plaintiffs the full Distribution of Net Profits to which Plaintiffs are entitled.

33.     Having a controlling share of the LLC, the Levitans have now advised Plaintiffs that the LLC will no longer lease space from the Plaintiffs. Thus, the Plaintiffs will be deprived of the rental income from the LLC, and more insidiously, current and prospective clients will be confused and misled as to the ongoing availability of the Oates' expertise and availability in precisely the same address to which they have become accustomed over the 20-plus years of the enterprise's existence.

34.     If the Levitans are allowed to proceed with their proposed actions at the April 2, 2007, Special Meeting, the Levitans will terminate all Vermont employees of the LLC. While the Plaintiffs are not employees of the LLC, there are three (3) long-time employees of the LLC who will obviously be injured. These employees are critical to the successful functioning of the

LLC by providing administrative support and substantive expertise. If these Vermont employees are summarily fired, for no cause, the possibility of profitable operations will be severely diminished and the Levitans and the LLC may become targets of State and Federal employment claims, the time and expense of defending which will further impair the LLC's viability and ability to make the prescribed payments due the Oates. This, of course, does not take into account the unjust harm that will befall these employees by having their salaries and benefits suddenly terminated. The prosecution of the foregoing claims will undoubtedly take place in a Vermont venue, yet another reason for this Court to supersede the Maine proceeding.

35.     If the April 2, 2007, Meeting is not enjoined, the Levitans will close the Vermont office of the LLC. If that happens, the Levitans will then be in a position to deprive the Plaintiffs of their health insurance, automobile allowance, and other benefits on the grounds that Plaintiffs are no longer conducting any business for the LLC.

36.     Leaving aside the long-term impact that the proposed actions of April 2, 2007, will have, closure of the Brattleboro office of the LLC will have a devastating impact on the LLC's financial position. The majority of the LLC's work in progress is in the Brattleboro office. If that office is simply shut down and unable to continue to generate revenue, the LLC will suffer tremendous financial harm. Any attempt to relocate the Brattleboro work in progress to Maine will have very limited success. The nature of the business is necessarily a very personal one. It is unlikely that many clients who have been dealing with Bill Oates or Heide Bredfeldt in the Brattleboro office will agree to put their trust in another individual, much less Howard Levitan. The proposed closure of the Brattleboro office would therefore constitute a direct and clear breach of Defendants' duties of loyalty to the Plaintiffs and the LLC.

37.     At the same time that the Levitans are seeking to close down the LLC's

Brattleboro office, thereby jeopardizing the continued existence of the LLC and the Plaintiffs' right to income from the LLC, the Levitans are aggressively trying to enforce the Non-Compete Agreement.

38. By insisting on enforcement of the Non-Compete on the one hand, and refusing to allow the Plaintiffs to engage in business on the other, the Levitans are effectively seeking to deprive the Plaintiffs of any stream of income.

39. In short, the Levitans are seeking to deprive Plaintiffs of the entire benefit of their bargain while obliging Plaintiffs to shoulder all of the Agreement's burdens. This is not legal, equitable, or ethical.

## COUNT I – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40. Plaintiffs hereby reassert and reallege paragraphs 1-39 as if set forth fully herein.

41. A covenant of good faith and fair dealing is implied in the 2004 Agreement between Plaintiffs and Defendants. As part of this covenant, Defendants are obligated to deal in good faith with Plaintiffs and are prohibited from doing anything to undermine or destroy Plaintiffs' rights to receive the benefit of the Agreement.

42. Defendants have exhibited bad faith, and have thereby breached this covenant. The bad faith exhibited by Defendants includes, but is not limited to, Defendants' willful rendering of imperfect performance, evasion of the spirit of the bargain, and abuse of power to specify terms. In particular, but without limitation, Defendants have exhibited bad faith by failing to pay Plaintiffs the Guaranteed Payments to which Plaintiffs are entitled, by failing to make the annual distributions to which Plaintiffs are entitled, and by seeking to close the Brattleboro office of the LLC. Defendants have also exhibited bad faith by breaching their

fiduciary duties to Plaintiffs.

43. Defendants have therefore breached the covenant of good faith and fair dealing.

44. Plaintiffs have been damaged as a direct result of Defendants' breach of the implied covenant of good faith and fair dealing.

### COUNT II – BREACH OF FIDUCIARY DUTIES

45. Plaintiffs hereby reassert and reallege paragraphs 1-44 as if set forth fully herein.

46. Pursuant to their positions in the LLC, in general and with particular regard to their controlling position in the LLC, Defendants owe Plaintiffs a duty of loyalty and are obligated to protect the interests of the Plaintiffs.

47. By refusing to remit the executory consideration to which the Plaintiffs are entitled as part of the 2004 Agreement, Defendants have breached the duty of loyalty they owe to Plaintiffs.

48. Defendants are the sole owners and operators of Defendant Quantum.

49. Although the scope of Quantum's business is unclear, Plaintiffs recently discovered that Defendants have used the LLC's property to advertise Quantum's services.

50. If, as it appears from Quantum's use of LLC property, that Quantum is an entity that competes with the LLC, and diverts revenue that properly belongs to the LLC and thus reduces further the ability of the LLC to honor its payment obligations to the Oates, then the mere existence and operation of Quantum is an appropriation of the LLC's corporate opportunity and a further breach of Defendants' fiduciary obligations to Plaintiffs and the LLC.

51. Plaintiffs have been damaged as a direct result of Defendants' breach of their fiduciary duties.

### COUNT III – CONVERSION

52. Plaintiffs hereby reassert and reallege paragraphs 1-51 as if set forth fully herein.

53. Defendants are the sole owners and operators of Defendant Quantum.

54. Although the scope of Quantum's business is unclear, Plaintiffs recently discovered that Defendants have used the LLC's property to advertise Quantum's services.

55. By using property of the LLC for their own business, Defendants have effectively converted LLC property to their own use and have thereby damaged the Plaintiffs.

WHEREFORE, Plaintiffs William Oates and Associates, Inc. ("WOA"), William Oates, and Heide Bredfeldt respectfully request that this Court enter a Judgment and Decree:

A. Enjoining the Defendants and/or Oates & Bredfeldt, LLC from convening the Special Meeting of Members noticed for 10:00 a.m. today (April 2, 2007) at the law offices of Bernstein, Shur, Sawyer & Nelson in Portland, Maine;

B. Enjoining the Defendants and/or Oates & Bredfeldt, LLC from taking any of the actions listed in the Notice of the April 2, 2007, Special Meeting of Members until after this Court has had a chance to hold a hearing on the issues raised in this Verified Complaint;

C. Awarding Plaintiff compensatory, consequential, and special damages for the harm incurred as a result of Defendants' actions;

D. Awarding Plaintiff all attorneys' fees incurred as a result of Defendants' actions; and

E. Granting such other and further relief as this Court deems just and equitable.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated at Burlington, Vermont, this 2 day of April, 2007.

DOWNS RACHLIN MARTIN PLLC

By: *[signature]*
Marc B. Heath
Eric A. Poehlmann
Charity Clark
DOWNS RACHLIN MARTIN, PLLC
199 Main Street, P.O. Box 190
Burlington, VT 05402
Telephone: (802) 863-2375
Facsimile: (802) 862-7512
Attorneys for Plaintiffs William Oates and Associates, Inc., William Oates, and Heide Bredfeldt

## VERIFICATION

I hereby verify under oath the truth of the facts alleged above based upon my own knowledge and belief, and state that each and every factual statement appearing in the above Complaint is true to the best of my knowledge.

By: *[signature]*
William Oates

STATE OF VERMONT
COUNTY OF WINDHAM, SS.

Sworn to and subscribed before me this 1st day of April, 2007.

*[signature]*
Notary Public

My commission expires: 2/10/11

BTV.558814.06